ALLCARE HEALTH Your Honor, it certainly is not inconsistent with the subjective problem. For all the reasons I mentioned. And so, I apologize. Please repeat your question. The claim construction required involvement of the patient, right? And that the HIMARC system does not involve the patient. And what I'm saying is how can your own claim construction propose a requirement that the patient be involved? Look at the bottom of 6701 and 6702. In other words, what was the reasonable argument as to why 102 was infringed? Your Honor, as I understand, the reason ultimately for finding 102 was not infringed was that there had to be an interaction between the patient and the healthcare company  and our expert took the position and filed a report and said it doesn't have to be a direct interaction between those people. That was the position that he took. And in fact, that position was presented by Mr. Hill to the judge before the decision vacating the ruling against counsel. And while the judge rejected it, his position was that our expert said that there didn't have to be a direct interconnection. Now, you're saying that that's not reasonable. This position doesn't say by all care that there had to be a direct interconnection. We agreed we would continue the argument until we answer the questions. I also interrupted you in the middle of the sentence. Would you start again? Okay. My position is that Mr. Holland, the expert, took the position that there did not have to be a direct interaction. And if you look at Figure 1 of the patent, there is no direct interaction between the patient and anybody else, between the employee and anybody else. They are involved in the system because they benefit from the system. So all I'm saying is that we don't have to have been right in order to avoid this exceptional case finding. All we have to do is have a reasonable position. And I'm saying the Holland declaration does have a reasonable position. I'd also like to mention the point that it is incongruous, and one of our points is that the district court went through every one of these points and found every one of the counsel absolved of the sanctions that he originally interposed against them. Those lawyers were the lawyers who did what all care did. The position of the lawyers and the position of all care was inseparable, and the district court mentioned that. We think it is totally improper for the district court not to have considered all of the evidence before him, including the evidence that was before him through the submissions of counsel. And we ask that if the court finds that any part of the exceptional case finding should stand, that the court should remand the district court to consider all the evidence before he reaches his final conclusion. Well, he did consider all of the evidence. And you had another proceeding, ex parte, and it turned out to be a different record. One record, and there's another record. Well, there are two parts. That's right. We suggest that he should have opened the record to all care, as well as having opened the record to the counsel. Why is it abusive of his discretion not to have done so? Because the exceptional case finding is a punitive finding, and the cases suggest that the district court judge for punitive findings should consider all the evidence. He had this evidence. He knows that this evidence exonerates the lawyers. That's a bit strong, but it's not an exoneration. The point is, though, that he had one record, and the lawyers participated in that. Later on, they came forth with something they didn't use the first time. It created enough of a different record for the judge to give the lawyers their Rule 11 sanctions. But it doesn't say anything about the record they might have made if they had used the same evidence in the other proceeding. Your Honor, it's our position that there was enough evidence before him at the time to exonerate all care. It is our further position that if this court finds that the exceptional case finding should stand, that fairness dictates that when he's penalizing the client for the actions of the attorneys, having found that sanctions should not be awarded against the attorneys, fairness dictates, and cases dealing with punitive sanctions indicate that the court should not... That could be a matter between the client and the lawyer, if there's some problem with what the lawyer did on behalf of the client as opposed to what the lawyer did on behalf of himself. But I don't see why that undermines the proceeding that he concluded before he got into the Rule 11 proceeding. Your Honor, the client is dependent on his lawyers. And bound by the lawyer what he does. Absolutely, he's bound. But if the court is going to permit the lawyers to open the record to submit additional evidence, we think that fairness dictates that since the evidence is the same for the lawyers and the client, the court, in fairness, should open the record to permit both of them to do it. Well, what's so significant in the second record? That's something I'm having difficulty in seeing because I've read all this stuff. I don't see that the second record had anything in it that was that significant. I mean, he may as a matter of discretion have decided that for various reasons not to sanction the lawyers. But in terms of the record, I don't see that the record was that different. What's so different about it? Your Honor, in many cases, for many of these points that he found against all care, it is not significant. But Judge Means thought it was significant. Judge Means found that on the original record, he was not going to absolve either party, either the counsel or all care. And somehow, someway, on the additional record, that he was going to absolve the parties. And I would say if you look at the various points that he dealt with, for example, the misrepresentation to the Western District of Pennsylvania, he said that if any court should sanction anybody, it should be the Western District of Pennsylvania. And that court hardly relied on any of the points that were relied on by Highmark. On the question of res judicata and collateral estoppel, I submit there's no difference between the findings he made and the findings that we, the involvement of Highmark in the Trigon proceeding. Ms. Kernick went to the hearings and, according to our papers, assisted or provided questions or assisted counsel for Trigon in that case. And the judge's findings in the vacating decision were not much different. Suppose he was wrong about trying to adjudicate supposed impropriety in the Pennsylvania court. Suppose he was wrong about res judicata and collateral estoppel being an unreasonable argument. What difference does it make? If the infringement contention was not made in good faith and was objectively unreasonable, you lose anyway, right? Your Honor, that's not correct, because under Brooks, you must have subjective intent and you also have to have objective recklessness, two prongs. And the subjective intent, even setting aside for the moment the discussion we've had about objective propriety, recklessness or not, when you've got a claim being made and you've got a district court in the Eastern District of Virginia finding that the critical point of distinction, the 52C subparagraph dealing with diagnostic smart systems, that the claim was not restricted to it. You have the special master holding that it's not restricted to it. Why would it be improper for any lawyer under those circumstances to advance a claim of infringement when that was the focal point? I don't think you're answering my question. What I'm asking, I'm saying, suppose you're right about the Pennsylvania-related finding, that it wasn't his business to determine whether there was an impropriety before the Pennsylvania court. Let's assume you're correct about the res judicata and collateral estoppel argument based on virtual representation being at the time a reasonable argument since been rejected by the Supreme Court. Let's assume you're right about both of those. What difference does it make if, in fact, the infringement contention was objectively unreasonable and made in bad faith? Your Honor, if, in fact, the infringement claim was objectively unreasonable and objectively reckless and made in bad faith, both subjective and objective, it wouldn't have made any difference. But the point is, it does make a difference because the infringement contentions did not satisfy both prongs of the Brooks Furniture Test. And the Brooks Furniture Test does apply even though Highmark says it doesn't. Because in the old reliable case, you had a case where there was, in fact, in the E.O.N. The court divided the issues into litigation misconduct on one hand and basis infringement charges on the other hand. Separate points. We submit that it's got to satisfy both prongs and any lawyer, knowing that Judge Hilton sided with them on the critical issue of infringement and Don Martins, who was the special master, sided with them on the critical issue of infringement through the claim construction ruling, had every reasonable basis for feeling that there could be infringement. There needs to be two prongs satisfied in the Brooks Furniture Test. And two prongs are not satisfied, even if it's got to be objectively reckless and there has to be a subjective prong. It's not either or. All right. Let's hear from the other side. We'll save you rebuttal time, Mr. Dunn. Thank you. Thank you, Your Honor. Mr. Ehrlich. May it please the court. I have a brief statement and then I would like to answer the question posed by Judge Dyke. This was not a simple case of a dispute on claim construction. Contrary to what was stated by Mr. Dunner, in fact, the critical elements of claim construction were stipulated to. The meaning of the word for in the first half of element 52C, the diagnostic smart system half, was stipulated to by All Care. The fact that 102 and the preamble required the interaction, not just interconnection, but interactions of patients and other elements was stipulated to by All Care. That doesn't help me that much. What I want to understand is whether the infringement contention was reasonable or unreasonable. Your suggestion that Brooks Furniture somehow doesn't apply here, it strikes me, is a little strange, to put it candidly. Let me explain, Your Honor. I'm sorry. I believe that's a misstatement. I don't believe that's what we're saying about Brooks Furniture. We're saying it doesn't apply as to litigation misconduct. But it certainly applies as to whether or not the case was frivolous. Okay, fine. So help me understand whether the case was frivolous or not. There's a description here of an embodiment in this specification at the bottom of Column 9 and the top of Column 10, which seems to be different from the smart system. As I understand the smart system, you enter the symptoms, it pops up the diagnosis. Here in Column 9 and the top of Column 10, you enter the diagnostics of the symptoms. Then the physician enters his proposed method of treatment, and then the system tells you whether that comports with the protocols and is a standard treatment. Does the Highmark system come within the embodiment that's described at the bottom of 9 and the top of 10 of the specification? Let me say this. First, that was not an element that was in dispute in the court below. That is what is called the Utilization Review Smart System. The parties didn't disagree about the Utilization Review Smart System, and that's the part where the physician says, this is the treatment that I'm proposing for my patient. Will you, Highmark, authorize payment for that? The Utilization Review Smart System wasn't part of what this case was about. On summary judgment, the first half of 52C, which reads on the Diagnostic Smart System, requires the entry of symptoms to be for the purposes of tentatively identifying. I don't think you're answering my question. I have to consider 52C in its entirety. It has two parts to it. What I'm asking, there's an embodiment described at the bottom of 9 and the top of 10 here, which involves the physician entering the proposed treatment, which is what you were arguing about, both of you, in the first appeal. You were saying if the physician enters the proposed treatment, it's not within the claims they were saying it was. What I'm saying is, here, I look at the specification. I see this embodiment at the bottom of 9 and the top of 10. Does the Highmark system come within that described embodiment or doesn't it? What I'm saying, Your Honor, is that's not in the record in the court below because that wasn't an issue that was in dispute. The issue and whether or not infringement, the issue of infringement, rose and set on whether or not the entry of symptom data was for the purposes of proposing treatment in the first half of 52C. The parties agreed that there were two halves and there was a utilization review half and that was not in dispute. What was in dispute was the first half. All Care's own expert testified that in Highmark system, what identified the treatment were what were called CPT codes. Those are current procedural technology. I'm sorry, that identified treatment. Symptoms were identified by ICD codes. All Care's analysis of infringement, its theory was that the completing of a form that contained both an ICD code, symptom code, and a CPT code, a treatment code, that the completing of the form itself was what constituted infringement. We submit this is inherently unreasonable for the reason found by the special master and the district court, which is if that could infringe 52C, then it would not, then the diagnostic SMART system, which again was stipulated by the parties, to read at least on a diagnostic SMART system. 52C has to read at least on a diagnostic SMART system according to... But it doesn't have to be limited to that, which is the point I'm making about 9 and 10. That it includes more than a diagnostic SMART system where you enter the symptoms and it gives you a proposed treatment. It has to at least cover what's described at the bottom of column 9 and the top of column 10. And if it does cover that, and those features are present in the Highmark system, then there's a decent infringement argument. If not, it's not. Your Honor, I would respectfully submit that you have to meet every element. That literal infringement was the only thing raised here. And I would submit that you have to meet each element. And the second element is the payment... Your view is that there's no infringement if the second step is the entry of a proposed mode of treatment by the physician, correct? Yes. Well, but how's that consistent with column 9 and column 10, which specifically identifies a situation where the physician is entering a proposed mode of treatment? Here's what 52C says, Your Honor. Entering through... No, but answer my question. Well, but in order to answer your question, I have to... I understand you don't like my question. I do like your question. And you're going to say that it's not consistent with the language. But I'm asking you specifically about column 9 and column 10. It contemplates the entry of the symptoms and then the physician entering the proposed mode of treatment, correct? For utilization review purposes, yes, it does. That is exactly what 9 and 10 does. That is the process of what is called utilization review, which is where an insurer looks at the proposed treatment and then says whether or not they will pay. But the first half of 52C doesn't read on a utilization review system. The first half of 52C requires the entry of the symptoms to themselves proposed treatment, whereas 9 and 10 talk about the separate entry of both symptoms and treatment. That in and of itself cannot satisfy the requirement of the first half of 52C that the symptoms identify the treatment. I'm having trouble with that because the specification is talking about a system in which the symptoms are entered and the physician enters the proposed mode of treatment. And then the system makes a comparison with the insurance company protocols and standard treatments. And what you're telling me is that your claim construction excludes that embodiment that's described in the specification. No, I'm not, Your Honor. What I'm saying to you is in the district court below and as affirmed by this court, including Judge Newman and yourself, Special Master Martins found that there were two parts of 52C. One was a utilization review smart system. That's the second half. Yeah, but your problem is this isn't just describing the second half of 52C. This is describing a system in which the symptoms get entered and the physician, not the computer, comes up with the proposed mode of treatment. That seems to me to be inconsistent with your claim construction. I would submit not, Your Honor, because the claim construction requires the symptoms to be entered for the purposes of identifying the proposed mode of treatment. In your scenario, in the scenario of Column 9 and Column 10, they're entered separately. The symptoms are not entered for the purposes of proposing the mode of treatment. The symptoms are entered for the purposes of supporting the proposed mode of treatment so that the insurer will then have an opportunity to say, you're right, that treatment is justified because this patient is suffering from whatever the symptoms or diagnosis is. But in the first half of 52C, it's treated differently. It requires the symptoms to actually identify the treatment. And that was always the problem with all-cares infringement contention, which is what we're talking about. I understand that that was the construction that was adopted and implicitly the construction that was approved by us when we affirmed. But I'm suggesting to you that there's an alternative construction which is not unreasonable, which involves the physician entering the proposed mode of treatment. And that is reflected in Columns 9 and 10. Maybe it's wrong, but at least it has some support in the specification. Well, then let me say this. When you're looking at whether or not something is objectively baseless and a subject of bad faith, the Brooks standard, it seems to me that the party who is exerting infringement must at least have had the idea or the argument that Column 9 and Column 10 did what you were saying it does. If that wasn't their theory of infringement and their belief was different, then I don't see how the court can say, well, there could have been something that they thought of that they didn't think of and we can affirm it. But that is not what we argued for the last 10 years in this case. That is not what the issue was about for the last 10 years in this case. And the reason that we asked for the exceptional case finding is because the district court found that even before a cease and desist letter was issued, All Care had a demonstration version of Highmark system that it found on an internet that is in all respects accurately reflects what Highmark system does. And in that system, it confirmed that symptom data was entered separately from treatment data and that the treatment was identified by the use of CPT codes as admitted later by All Care's expert, Dr. Holland. And that from that moment on, long before the cease and desist letter, All Care ignored that and developed a theory of infringement that the mere completion of a form was sufficient for infringement. And when that argument was made in the prior appeal… Mere completion of the form showing what? Mere completion of a form requesting pre-authorization review. No, but they must have said the form had to show the symptoms, right? Well, yes. They admitted that the symptoms were there and that in a separate box, if you… And I don't know where that is in the record, but we can send you a letter with that particular site. But in a separate box, there's treatments entered separately. So the symptoms aren't identifying the treatment. And when the argument was made relative to the completion of the form, if my recollection is correct, I believe, Your Honor, you were the one who said, isn't that a 102 problem or a 101 problem if all you're doing is filling out a form? Now, that was their argument, that all you had to do is fill out a form and you could satisfy this claim. And that is inconsistent with the stipulation that All Care made in 2004 that it covered at least a diagnostic SMART system. That was their belief, that it covered at least a diagnostic SMART system. And if that's the case… Well, what's the problem with that? I mean, if it covers that, that doesn't mean it's limited to that. It's not limited to that. But if it covers a diagnostic SMART system, then the symptoms have to be entered for the purposes of identifying the treatment. They can't be entered separately for different reasons. And that was the problem with All Care's argument. You can't, on the one hand, for purposes of claim construction, say the form requires a purposeful activity, and then for the purpose of infringement, say it doesn't. Let me ask you before you run out of time. You alluded to it a minute ago. And I wasn't on the first panel, so I'm not sure how far they got into it. But why was this a patentable invention? Why did this satisfy 101? We never believed that it did. And when Judge Dyke asked me that question before, he asked me, why didn't we raise that? And the obvious reason is when you're moving on summary judgment, it's a lot easier to prove non-infringement than it is to prove unpatentable subjects. In my humble opinion, it's there. It's akin to a jurisdiction as far as I'm concerned. And it seems to me that this is obviously not patentable. If that's the case, then the whole case was frivolous. The whole case was frivolous from the start. As the record demonstrates, what All Care did was it created a ruse. It created a survey that did not survey the elements of the claims. And it went around to dozens and dozens of parties and sent cease and desist letters without any legal opinion, based only upon the layperson's view that this survey was somehow supportable. The evidence is that it never applied the claims of the 105 patents to the Highmark system before it asserted infringement. It is uncontested. It is uncontested that 102 was kept in its case for a strategy. Well, I'm not sure that that's true. But the basic problem is to try to evaluate whether there were decent claims or objectively reasonable claims. As this case progressed, it's not so much the pre-filing investigation, but now that we know what the Highmark system is and we can look at the claims and see whether there was a reasonable claim construction that encompassed the Highmark system. That's what this is all about, apart from the one-on-one issue. And neither of you has paid all that much attention to it. I believe we did in detail in our brief discuss the fact that Dr. Holland himself was the one who testified that symptoms were not entered for identifying treatment codes in Highmark system, but rather that Highmark system required a separate entry of treatment codes. But as to 101 and the question that you asked Mr. Dunner, in his deposition, Dr. Holland, when asked, how does the employee member interact with the bank in the Highmark system? And his answer was, from the information that I've read, the employee does not appear to interact with the bank. That was a requirement of 102. That deposition occurred in the very beginning of August of 2007, and AllCare did not withdraw its claim on 102 for more than a year and a half after that, and did not even respond on our motion for summary judgment as to 102. So even assuming you have concerns about 52C, AllCare's position on 102 was completely unsubstantiated by its own expert, and yet it maintained it for what their own lawyers represented to the court as being a strategy to avoid invalidity of the patent. Yeah, but that wouldn't be sufficient to affirm the judgment as to the whole word of sanctions, right? Just even if we assume that 102 was objective, the position on 102 was objectively unreasonable in bad faith, that alone is not enough to affirm here, right? I think it is, Your Honor. I most certainly think it is. How could that be? You're collecting attorney's fees post the period when 102 was withdrawn from the case? Well, Your Honor, yes, we are asking for attorney's fees after 102 was withdrawn from the case, but you'll recall by that time, AllCare was also on notice that its expert had come up with the opinion that in Highmark's system, the treatment codes were entered separately from symptoms, and therefore the symptoms were not actually identifying the treatment. And the district court gave weight, as did the special medics. That's an argument that 52 also satisfies the Brooks Furniture Standard. It's not an argument that the position about 102 is in itself sufficient to affirm. I'm saying that it is sufficient to affirm because there are actions that occurred after 102. I'm saying that that is not sufficient. So you're agreeing that the unreasonable position allegedly as to 102 is not sufficient in and of itself to affirm? No, I'm not. I'm agreeing, Your Honor, that if you're talking about the time period, which is something that Judge Means looked at, Judge Means definitely looked at that, and we addressed that in our response on the attorney's fees motion, is that even if you looked at it up to the end of 102, AllCare suffered from the problem that it continued to proceed with 52C, despite the fact that its expert had provided an opinion that made it impossible for Highmark to... That's a confession that 102 alone is not enough. It's not enough. You yourself are arguing as to the post-withdrawal of 102, that there are other reasons that support those sanctions that have nothing to do with 102. If we affirm on the 102, that is not enough standing by itself. I respectfully disagree, Your Honor. I think 102 is enough. Your position makes no sense. Your Honor, if you affirm on 102, then your issue is whether or not attorney's fees are cut off after 102 is withdrawn from the claim. That's what the issue becomes. But if you affirm on 102 and say, yes, 102 was an exceptional case, I think you cannot stop there, because you have to look at the totality of the circumstances. You have to look at the bad faith. You have to look, I believe, at the false representation by Robert Shelton to the Western District of Pennsylvania that was, at least in part, the cause of the case being transferred. What business is it of the Eastern District of Pennsylvania to impose sanctions for something that happened in Pennsylvania? What case supports that? The Western District of Pennsylvania did not impose sanctions. It transferred it. I understand. What business is it of the Texas court to sanction somebody for something that happened before a Pennsylvania court? Judge Means looked at that issue in the Rule 11 sanctions and said, you're right, as to the lawyers, that's a colorable position. I shouldn't sanction the lawyers with regard to that. But on the exceptional case side, I have to look at everything that happened in this litigation. What case says you can look to what happened in another proceeding before another court?  I'm sorry, Your Honor. It wasn't a different proceeding. It was part of the same case. It happened before the Pennsylvania court. How can the Texas court reach out and say that conduct before the Pennsylvania court is sanctionable and I'm going to sanction it? What case says that a court can do that? I believe, Your Honor, that this court— Do you have a case? This court— Do you have a case? I was going to say, the totality of the circumstances law, I cannot remember the name of the case at this point in time, but when this court says— You don't have a case that— When— What case says that one court can sanction conduct before another court? What case says that? I believe that this court's precedent that says you look at the totality of the circumstances doesn't consider that if half of the proceeding occurred before it was transferred, half of the actions occurred before it was transferred, you can't look at those because this court itself actually says, you get to go back before the filing of the complaint and look at the actions of the parties. So if this court has the authority to say, I can look at what you did before you got here, before you ever filed a complaint, then surely the court can say, I can look at everything that happened after you filed the complaint. So there's no case? Pardon me? You have no case? I disagree, Your Honor. I believe that the totality of the circumstances— You have no case where we've upheld sanctions for conduct before another court, right? I— Your Honor, the answer, if you're framing the question that way, the answer would have to be no. But I believe that's inconsistent with this court's requirement of considering the totality of the circumstances because you can't accept a portion of what happened, take out. You cannot take out a portion of what happened in the litigation and say, I'm not going to consider that. I can consider from the first day they threatened Highmark with infringement and whether or not they did a pre-filing investigation and I can take it all the way up to judgment. I can do all of that, but I'm going to take out this two-week period before it was transferred to the court in Texas. I don't believe that's appropriate in light of the precedent which requires a review of the totality of the circumstances. Have we any more questions? Are there any more questions for counsel? Okay, I think we have the position. Thank you. Thank you. Let's see where we are. Judge Zyk asked Ms. Koenig what her view was on the Column 9, Column 10 statement in the patent specification. And the only thing I can remember of her answer was not a direct answer, but that she described it as the utilization review system and that wasn't what this case was about. It was about diagnostic smart system and she talked about the first half of 52C. Well, on page 6698 in the special master's claim construction report, there's a statement. And Highmark argues that 52C covers only the disclosed diagnostic smart system and not the utilization review smart system. Allcarer argues that 52C covers either of those embodiments alternatively. And I think, Judge Zyk, your point that we're in response to Ms. Koenig's point that it was stipulated that the claim covers at least the diagnostic smart system doesn't end the discussion because the claim can be generic to both. And in fact, I submit the claim is generic to both. Ms. Koenig talked about the first half dealing with four tentatively identifying a proposed mode of treatment as being restricted to the diagnostic smart system. Well, Judge Hilton had that very issue before him and said it wasn't. And Don Martins, the special master, had that issue before him and said it wasn't. Judge Hilton went on and said that there's no requirement of a cause and effect relationship of that language. So I submit that the column 9, column 10 statement, which is directed to the utilization review system, is in fact covered by the claims. And I submit further that that is what Hallmark is doing. But as I understand, Ms. Koenig, she's saying that wasn't argued before. That wasn't argued? That's what I understood her to be saying. That wasn't argued. We shouldn't come up with some new theory as to why the infringement allegation was reasonable. The theory that I was asking her about, she said, wasn't raised by him. Well, it was argued. We argued that Hallmark is using a utilization – well, we argued that it was also using a diagnostic smart system as part of our argument. But we argued, at the very least, it was using a utilization review system. And this statement by the special master basically says that. We were arguing it. Now, in fact, I don't know whether we pointed to column 9, column 10, but that is a utilization review system, and that is exactly what we were arguing. And Ms. Koenig admitted that that was the utilization review system. Now, she said that the party stipulated to 4. Well, we may have stipulated to what 4 meant, but the stipulated definition was before Don Martin's in his special master's report on claim construction, and he nevertheless found that the claim was not restricted to a diagnostic smart system. Now, Ms. Koenig also said that Brooks – she's not fighting the application of Brooks to basis litigation. She says it doesn't apply to litigation misconduct, but then in her brief she categorizes everything as litigation misconduct, and it's not all litigation misconduct. The only litigation misconduct at best is the Western District of Pennsylvania point, and I say at best, and the shifting claim construction, and all the others are subject to Brooks. So I – the bottom line is, and I'm probably way over time, I'm approaching the end, is that I submit the contentions were not objectively baseless. They were not subjectively baseless. They were not subjectively or objectively baseless before or after litigation. The Hill report says he examined all of the claims on an element-by-element basis, claim 102, claim 52, and the only focal point of the discussions between Ms. Koenig and Ms. Hill focused on 52C, and there was a difference of opinion. We relied on Trigon. She rejected Trigon. We relied on all the arguments that we're making today. I think my time is up, Your Honors, and unless there are questions. No questions. No questions. Thank you, Mr. Jenner, and thank you, Ms. Koenig. The case is taken under submission. That completes the argued cases for this morning.